on behalf of the Appellant, Mr. Brett C. Williamson, on behalf of the Appellee, Ms. Gina L. Golojuch. All right. You will notice that we have an empty seat. Our third panel member is unable to be with us today, Justice Shostak will, however, participate in our discussions and our deliberation, and she will be listening to the oral argument as it is being recorded. So it's important, very important today, that you make sure that you're heard by the microphone, adjusted to how you are comfortable, so that she can hear everything that we're talking about here today. All right. So if we're ready, then, Mr. Williamson, you may proceed. It only goes so high. So I'll try to speak. I usually don't have a problem speaking loud. Thank you. Thank you for the opportunity today, Your Honor, Your Honors. We're here on three issues relative to 9-3. The first issue, which kind of trails into the remaining two issues, is the issue of the court's ruling that 513H does not apply in this particular situation as it relates to the payment of college education expenses. The issue that we appeal is that my client is court-ordered to pay into a 529 plan by way of the Judgment for Dissolution of Marriage. That was an agreement that was made back in 2011 and 2012 when the Judgment for Dissolution of Marriage was entered. However, that payment was for college. And so when the trial court made a ruling relative to 513H not applying, it is essentially saying that either, and this was not in the court's findings, that that particular provision is ambiguous, which it was not, or that it was just completely disregarded to begin with. Well, it was described in the marital settlement agreement as a debt between Mr. Wilhelmsen and Mrs. Wilhelmsen. And it was to be paid into those 529 accounts. And there probably should have been three of them, or maybe there was just one that was going to be divided three ways. I don't know the details of that, and I don't think the record tells me. So it's not really a support payment at the point of the Judgment for Dissolution. Sure, Your Honor, but a 529 plan has only one function. Well, I understand that, but they agreed to settle this debt. And we don't know from this record either what that debt is, and I guess it's not critical right now, other than there's some question about one was employed when the other one wasn't employed, and then the other was employed. And, you know, there were monies taken from somewhere to pay bills, and maybe this is just to pay back those bills. Be that as it may, it is not a support issue at that point. College education is not necessarily considered support. It is considered post-secondary education. Sure, but it's still in the realm of 505 and child support-related expenses because it's modifiable. Well, within limits. Sure. I mean, to your point, Your Honor, let's just talk about the debt itself. If it was a debt that was truly owed to Suzanne, then it would have been a debt paid to Suzanne, not a debt paid into a 529 plan. But they agreed. They can do whatever they agree to do. I agree with you, but you can't have it both ways. It's either going to be paid into a 529 plan, and then it is in the realm of college education money that will be there for the payment of college, or it is a payment to Suzanne. If it was really a debt owed to her, it would have been paid to her, regardless of what the agreement is. And so, to your point, at the time of the judgment, yes, no one was in college. But now that we have the first daughter that's going to college, and eventually we're going to have two more that are going to go to college, that 529 plan can only be used for college. It can't be used to give money back to Suzanne for whatever she wants to use it for, or for her actual repayment if there really was a valid debt that was going to be owed to her. And I think the overarching point, and I think a point that counsel for Suzanne makes, is that my client is trying to shirk his responsibility. That's actually not the case. The case is that that money is being paid into a college education fund that has to be used for the payment of college. Therefore, when you're apportioning college pursuant to 513, you have to take that into account. You can't disregard it. All right. But college, then, according to the newer statutory authority, you know, when I first started, there was no limitation on how much money could be spent for college. We now have a reasonable limitation, and that is what the cost of in-state residency for the University of Illinois would be. Sure. We know that, number one, that would be less than if you were out of state. I mean, that's one of the reasons it's done. We also know that this child was going to go to Brandeis, but then didn't do that, either because of expense. We don't know exactly why, but she didn't do it. Now they're in Colorado. We don't know if that is in-state, if they've lived there long enough. Do we know from this record what that tuition is? No. So at the time in which the petitions were filed, the child didn't attend Brandeis for one year, then transferred to Colorado. And there were some discussions informally with the trial court that are not part of the record about what the difference between in-state and out-of-state tuition would be. And I think at the time when we filed, the child was not eligible for in-state tuition. I think their mother had just moved there. And she'd be 6 to 12 months, depending upon the circumstances. Yes. It may be an issue next year, but right now, the whole — the amounts that have been ordered by the trial court do not cover the total tuition for this child to attend whatever she's attending at this time. And so if she does have some resources, she would have to use those. Sure. So why should they be figured into the distribution of the parents at this point in time? Well, Your Honor, first, 513H controls the money that is available right now, post-judgment contributions to a 529 plan. It is not voluntary or involuntary. The language says any contributions. So if my client has court-ordered to make those contributions, those contributions have to be considered for his portion of college. But the problem that we're having is the trial court ordered a 60-40 split based on income, because it says it in the order, income alone. And then on top of it, ordered him to continue to make the payments of the 529 plan, which has the net effect of about 80 to 82 percent of the college on Illinois. So about $28,400, roughly. So I don't disagree that the court should have probably looked at what the child could obtain in terms of scholarships, grants, any money that the child had. But I believe the court's intention was, if the child's going to Brandeis, the child's going to pay everything over about $36,000. I'm going to apportion $36,000 to the parties. Right, wrong, or indifferent, that's what the court did, and they did it based on income. And then on top of it, lump this debt in because, you know. Well, we can't, how do we change that debt amount? How do we change that? You don't have to. You don't have to. I'm not asking the court to. But your client stopped paying for whatever reason when the bankruptcy, I suppose, was filed. And I'm still a little concerned about how a bankruptcy is filed with a six-figure income, but be that as it may. Sure. He files for bankruptcy, he stops paying. There's a significant arrearage into that 529. He didn't stop paying. He paid throughout the bankruptcy proceeding because some of that money was applied towards the, it was approximately $9,000 was credited towards the first year of college, his college obligation of the $14,400 that the court ordered him to pay per year. The arrearages resulted from the years between the judgment and the time in which he filed for bankruptcy because if the court, in my statement of facts, which are not disputed, my client was not employed at the time of the divorce. He agreed to a debt. He should have been represented by counsel. That can't be undone. That said, every year that went by, he continued to try to work harder, obviously make more money, but he was constantly behind, constantly behind. So that's where the arrearage started, but then that was dealt with in the bankruptcy. He's still going to pay it all. Well, he has three children that are going to school, and they have this agreement to fund these accounts. Sure. So I don't understand what the problem is here in that if the fund was not properly or wasn't funded as expected at the time this daughter went to, is it Zoe? Zoe. Zoe went to school. Why should money be taken out of that account to satisfy part of his obligation? Well, Your Honor, I guess my point would be that even if he contributed from the date of judgment to the date in which he went to school, the law changed, and the law applied at the time in which we filed a petition for modification of college expenses and petitioned to set college contribution. At that point in time, 513-H was in effect. And so, you know, and my understanding of it and my practice of, you know, 513 and people contributing to 529 plans is I believe the legislative intent of that 513-H was because so many people had contributed to these college accounts, and then by the time everybody filed for school or filed for college, the trial courts were saying, okay, we're going to take all this money, and we're going to apply that to the kids portion, and now I'm going to order you guys to pay. And what was not fair or not appropriate was that the person that actually was paying that entire time ended up paying more. The difference here is essentially what they agreed to was a prepayment of college. However, it's still his prepayment of college. It's no different if it's right now, and if he voluntarily contributed to a 529 plan for seven years and we took that money, 513-H would apply just as if it was involuntary. There is no— We've had a lot of legal arguments, and there are a lot of moving parts in light of the change of legislation, as you pointed out. But what specifically, in summary, what relief are you asking us to have? I'm asking that the payments that he is making to the 529 plan by way of the bankruptcy to be included in his 40% obligation because right now he's ordered to pay $14,400 of $36,000, which is 40% of Illinois, plus the 529 money, which ends up being about 82%, 80% to 82% of $36,000. And let me ask you two questions related to that. Sure. Did the settlements agreements provide in any form that the husband's repayment of the marital debt would reduce his future obligations for any of the children's higher educational expenses? No. All right, so we have that issue. How would your interpretation square with the legislature's determination that the parties should be jointly obligated basically to pay for college expenses? Wouldn't your interpretation sort of frustrate that if you're tying it into marital debt? I don't know that the intent of 513 is for people to equally share. I guess I would disagree that the intent of 513 is that people are to share college expenses, I believe. In an equitable manner, of course. Yeah, sure. And so, I mean, in this case, as I state in, I believe, Section 3 of my argument, Suzanne makes approximately $30,000 more than my client and has approximately $280,000 more assets than my client at the time in which we did this. The assets weren't considered, income was only considered, and they disregarded the payments of the bankruptcy plan. So I would have a hard time believing that under the 513, looking at the parties' respective incomes and financial abilities, the child's abilities, and the other statements that are set forth in 513, that that would be an appropriate ruling from the child court. But if we go back to your argument, if he is to use, or if he is to be allowed to use his contributions toward his payment or his part of the obligation, then what asset does the child have? I don't know, Your Honor. I guess that maybe that needs to be remanded. I don't believe the child had any assets. I believe that the child was wholly dependent on the parties. Well, I know asset in the fund. Then she would have? There were no monies contributed pre-decree. Okay. The accounts were completely started post-decree for this. And, I mean, based upon prior history with 529 plans, I mean, I understand why it was constructed this way. It was constructed purposely to try to force him to pay this amount before they got to the allocation of what each person's responsibilities were. I would have done it the exact same way if he was a pro se. I don't fault him for how they did it. My problem is that I am trying to deal within the confines of the current statute, and when the trial court says that a particular statute that is not ambiguous and is very clear does not apply, that's essentially why I'm here. Your client tried at least twice before to modify this. We'll call it truly a modification. He tried to modify the agreement. The court said no. There's no fraud that has been alleged. There's no misrepresentation. And that would be the basis of a modification of a marital settlement agreement. Then we have the bankruptcy that might have refocused the attention, as you are doing today, that this really is a support obligation. Well, now can I modify my support obligation? Once again, the trial court said no. I mean, what is their different? I don't understand what's different in the third application from the first two. The whole purpose is to modify that responsibility. So, again, he shouldn't have represented himself. I mean, I understand that. We have to live with those orders, and I don't disagree with you. I think the premise of his arguments, and I think what was made very clear in the bankruptcy court, is that that debt was not a real debt. This was a debt that was saddled on a guy that was pro se in an effort to force him to prepay for college and then be able to come back and do it. That said, he's been trying to eliminate that debt. That's not the point of that. And if he was trying to eliminate the debt, he wouldn't have agreed in the bankruptcy court, just as Suzanne did, to make it a domestic support obligation, which is 100% contrary to what their entire brief says, which is it was a property settlement money owed back to her. They need to pick a lane. If it's a domestic support obligation, that's why it's not dischargeable. But now they're arguing, no, no, no, no, no. Contrary to what we agreed to in the bankruptcy court, it's actually money that's owed to me. It is not money owed to her. It's not money owed to her. The bankruptcy deposition is clear. It was money she withdrew from an account to pay for marital expenses that my claim had no control over. That being said, we're here, and we have to live with it. And so if I'm living within the confines of what the statutes require us to do, he is contributing post-judgment to a 529 plan, involuntary or voluntarily, and that has to be applied to his college contribution. It has to be factored in. It's not discretionary. And that's, I mean, that's the crux of all this, because if 513 doesn't exist, sure, there are secondary arguments about whether or not the court basing this purely on income is a rational within the confines of the evidence that was put forth, whether or not that was an appropriate ruling, or whether or not the fact that he's in bankruptcy and he has a truly inability to pay. However, at the end of the day, this is truly about statutory interpretation. 513H says what it says. The trial court said it doesn't apply, and there's no basis for that. All right. Counsel, your time has expired. You will have an opportunity to respond if you wish to after counsel has finished her. Thank you. Thank you. Ms. Colaluca? Good morning, Your Honors. May it please the Court? My name is Gina Colaluca. I represent. Maybe you should pull it down just a tad. I probably should. Thank you. It's not quite so tall, is it? My name is Gina Colaluca. I represent Petitioner Apolli, Ms. Suzanne Wilhelmsen, who actually is present before today. I agree that one of the main issues in this case is whether or not Section 513H applies, but there's really, this case boils down to two large issues, that being the first, and the second being whether he should be ordered to continue to contribute to those 529 plans and also contribute to his daughter's higher education. With respect to Section 513H of the Act, it does not apply to the payments made towards the 529 plans in this case, mainly because this was a property settlement and not a support obligation. As you pointed out, the judgment for dissolution of marriage included this obligation as part of the debts and liabilities section. If that included the affirmative obligation to contribute to his three children's college education in the higher education section, and we know under the case In Re De Merit Eponic, that language, which basically states the party shall pay for their children's education based upon their respective abilities to pay, we know that creates an affirmative obligation in both of these parties to contribute. But then comes the bankruptcy action, and your client agrees to something that creates somewhat of an ambiguity, and that is this is now, what was it called, a domestic support obligation or something like that? Yes. In order to make it nondischargeable. Correct. I mean, that probably was the goal, but it looks like it changes the animal, so to speak. It doesn't change the animal respectfully, mainly because the case, it is Adamson, and I want to give you the right data on this case. It is Adamson v. Costner, and then there's also the In Re De Merit Reporter case. These are both Second District cases, so this court's case is from 1999. And Adamson v. Costner basically found where a husband's maintenance obligation, that court found under the modified judgment for dissolution of marriage that the maintenance obligation was in substance an assumption of a marital debt. So that would be a property settlement for purposes of the trial court. However, there was also a concurrent bankruptcy proceeding going on, and they found for purposes of the bankruptcy proceeding that it would be a support obligation for purposes of bankruptcy and therefore nondischargeable. And there are a couple of cases, Adamson being one and In Re De Merit Reporter being another, that embody this principle that just because something is considered a support obligation under federal law in bankruptcy doesn't mean that under state law in the trial court it is considered a support obligation that has been modifiable. In fact, in this case, we know that this was a property settlement that was not modifiable because as you stated to counsel, he tried multiple times to find that it was modifiable in one way or another, and the courts keep saying no. In December 15, 2015, an order was entered on a motion to modify this obligation where the court specifically stated in the order that these contributions to the 529 plans are a property settlement. They are not a support obligation.  So under the law of the case, for purposes of the trial court and for purposes of this court here, that continues to be the law of this case. So the argument is they're obviously not modifiable. It was tried twice before unsuccessfully. Correct. But his overarching argument seems to be, hey, that's so well and good, but 513H mandates a reduction. But 513H, we have to look at the intent of the party's agreement because the bottom line is he agreed to do this. And at the time they entered into this agreement in August of 2013, 513H didn't exist yet. That didn't come into play until the 2016 amendment. And so because of the ---- So you're saying that should not trump the party's agreement. Absolutely. The parties agreed to this. That wasn't the law in place at the time of the agreement. And I think it's clear from the judgment itself that it wasn't their intent that this would be his college contribution because, as you pointed out, Your Honor, the higher education section makes no mention of the 529 plans whatsoever. It's also worth looking at the record to see what is this $79,000 comprised of because I do think it sheds light on why they would agree to do this in this manner. And that can be found on page 393 of the common law record. The parties throughout the litigation referred to a spreadsheet that was created in entering into their marital settlement agreement. And it shows that much of that $79,301.44 was repayments for funds withdrawn from what the spreadsheet calls a college account. However, my client's deposition transcript, that's in the supplemental record, and starts on page 29. The testimony I'm referring to starts on page 35 of the supplemental record. She explains that those college funds are actually securities from an inheritance from her father and were her non-marital estate. And she explains that the parties were tight on funds, and she had to dip into those accounts to pay marital funds during a time when Ms. Wilhelmsen was unemployed. And so, essentially, her non-marital estate made a loan to the marital estate, which then needed to be paid back. She also explains that she always thought that those non-marital securities would be used towards her children's college education. She refers to it, even in the deposition, as the college fund. So it would then make sense that, and this makes up not the full $79,000, but a large portion of it. And therefore, because this was her non-marital money that was loaned to the marital estate, and it was something that she was hoping to rely upon to pay for the children's college education, it makes sense that the parties agreed that Mr. Wilhelmsen would reimburse half of that. And instead of paying it directly to her, she just wanted it to go into a 529 plan. Those 529 plans weren't even established until right after the divorce was finalized, because they were open for this purpose. She wanted that money, her non-marital money, to be used towards the children's college education. As a result, we can't apply Section 513 to those payments, because that money does not belong to Mr. Wilhelmsen. That money belongs to my client. That's to reimburse my client's non-marital estate that she wants to use towards the parties' children's college education. Is this part of the $250-some-thousand of assets that counsel has talked about, these funds? I don't believe so. I know the securities, there were other amounts of the securities, but this was money that had already been used throughout the marriage and was being paid back. And so I don't believe it. So while I believe some of the securities, yes, were part of those assets, the money that's being paid back is being reimbursed for those securities. So that money was used during the marriage for bills, so it wouldn't be money that was readily available to my client until it was made paid back. And really, I should say readily available to the children, because that's what she wanted it to go towards. So that leads us to our second issue, is should he have been ordered to continue to fund the 529 plans as agreed and contribute to his daughter's college education? And the answer is absolutely yes, because he agreed to do both, and both were for separate obligations. The first, as I just explained, for the 529 plans was to repay that debt. The second was the affirmative obligation that he agreed to contribute to his children's college education. However, on top of that, the $14,400 per year order that would be payable towards his daughter's college education, he agreed to that amount. And we know that because in his pretrial memorandum, which appears in the supplemental record on page 68, he lists the amount to be paid towards his daughter's college education in the agreed issues. And he states, I've agreed to pay this percentage. I've agreed to pay $14,400 per year towards that education. And when was that submitted? That was submitted, I'm actually not sure of the date, but I could look it up for you. And that was submitted prior to the hearing, I believe, on the motion to reconsider is what I believe. So he agreed to pay this amount, and that begs the question, why would he agree to pay something that he couldn't otherwise afford? Well, he wouldn't. And so we know he can afford the $14,400 because, as you pointed out, he had a six-figure salary the year prior. He continued to have one throughout the proceedings. And in addition to that, he wants to try to use the fact that he filed for bankruptcy as a way to explain, you know, I couldn't afford this, look at all this debt I have. However, as we know, the case law doesn't support that position. In In Re, the Marriage of Letzinger, this is a second district case from 2001, it upheld that the court could modify, increase a party's child support obligation, even though they were in bankruptcy, because the bankruptcy actually put the payer in a better position to pay. Because think about it, it makes sense. If you file for bankruptcy, you're either discharging your debt entirely or significantly reducing it and going on a reasonable payment plan that, by virtue of being a bankruptcy payment plan and by having all of your expenses deducted out of it before you reach that amount that you are able to pay, the bankruptcy plan payment literally reflects what he is capable of paying his creditors. And so what the judge did is, I disagree that he only looked at the party's income. I think the order itself shows he considered a multitude of factors, including the fact that the party's daughter was likely going to be paying out-of-state tuition in Colorado. He did not require the parties to pay more than what is required under Illinois law for in-state tuition. Well, he really couldn't have. Correct. But he also considered the bankruptcy plan in detail. And what he did is he looked at, I have someone who's agreed to fund these 529 plans to repay a debt owed to the petitioner, and I also have someone who's telling me I will pay $14,400 per year towards my daughter's education. I also have someone who's in bankruptcy and has a bankruptcy plan. And the judge actually formulated the payments towards the college education and the 529 plans to conform to the bankruptcy plan. And by doing that, what the judge has done is the judge has made it possible for him to pay within his ability to pay for both of these obligations. And he did that because he agreed to pay both of these obligations. And so what the judge's order does is it orders Mr. Wilhelmsen to continue to pay the 529 plans at the $734.27 per month amount stated in the judgment, or, it specifically states, any lesser amount deemed payable by the bankruptcy court. In addition, he stated although he's agreed to pay $14,400 per year towards his daughter's college education, his payments don't need to exceed the $400 per month contribution that was allotted in the bankruptcy plan. So that's even before we get to the amount he was going to pay his creditors. Mr. Wilhelmsen indicated he'd be paying $400 a month towards his daughter's college education. Then, because of other proceedings, there was a modification of support where there was a finding that he overpaid $9,709.08. The judge said, I'm crediting that towards the first year of college. And then any amounts due and owing above the $400 per month and the $9,700 already paid would accrue and become payable to my client once the bankruptcy plan was over. So essentially what the judge did is the judge ensured that the first year of college, or Mr. Wilhelmsen's portion of the first year of college, was already paid for. Although by credits and other things. Correct, correct. Through the credit and the payment amount. Then this idea that the payments are deferred, essentially he's borrowing from my client for those years when the payments are deferred, that's only in play until the end of the bankruptcy plan. Once the bankruptcy plan is over, he is going to have to pay that money back somehow to my client. However, he's going to be in a better position to pay that money back to my client because he's not going to have all this debt hanging over his head. And the bankruptcy plan will be done, which under the bankruptcy plan, the payment towards all of the creditors, which there was some credit for debt, the attorneys and all of those fees, was $1,270 and some odd cents. So that's a significant chunk of money that he will have ideally available to him. Well, that assumes he also has employment that he can pay anything from, which might require additional modifications. But at this point, he is employed, correct? Correct. And as you stated, if there came a time when things changed, then that would be something to address at the trial court. But things haven't changed. He is employed. And so, essentially, the judge has in a way deferred the payments and required him to borrow from my client. But family law judges have a lot of discretion, especially with respect to property settlement and college support. And I see that my time is up, Your Honor. So I would just like to state briefly, he agreed to both of these things. He agreed to fund the 529 plans. He agreed to pay for college. They want you to let him out of this agreement. But we ask you to hold him to these agreements and the Charter of Courts orders. Thank you, Counsel. Thank you. All right, Mr. Williamson. Unless you're in the middle of a thought, and we'll give you six minutes. I have two major points, Your Honor. Piggybacking on the argument that Counsel was just making relative to the bankruptcy plan, putting him in a better position to pay, it's actually not true. Because what the trial court did, and it kind of comes in my third argument about his inability, second argument about his inability to pay, is they created a balloon payment. So the court acknowledges by its own order he did not have the ability to pay $14,400 per year in addition to the 529 money. And he broke that up and he ordered him to pay $4,800, which is $400 a month, which is in the bankruptcy plan. And he ordered him to pay $9,600 per year balloon payment at the end, which is approximately $38,400. So essentially, I agree that the bankruptcy plan is exactly what he can afford to pay. And that is the argument that I made to the trial court. There was no agreement in my – first of all, it's inappropriate to tell this court that an agreement in a pretrial memorandum is somehow, one, admissible, and two, binding on a trial court. Well, the purpose of a pretrial memo is to narrow the issues for purposes of the court. Sure. And if there is a section – I mean, all of these agreements take on different – or all of these forms, rather, take on different perspective based upon the circuitry and things like that. If there is a section, as represented by counsel, that says these are agreements – these are acknowledgments or agreements that I accept, if he is agreeing in that section, that narrowed that issue, didn't it? No, because what he agreed to was paying the bankruptcy money and paying $400 a month, which would have equated to $14,400 a year. That would have been his 40%. What the court did was say, okay, you're going to pay $14,400 a year, and I'm going to lump on another $9,600. And that's from where, the $9,600? You say it's a balloon, but from where? So the court took his – the court disregarded his 529 money, which is approximately – under the bankruptcy plan, Supan is about 90% of his creditors, okay? But let's just assume that number is $1,200 because that's the money that he's paying in the bankruptcy plan. The court disregards that under 513H, just throws it away. Now says you're going to pay $14,400 of $36,000 in addition to the 529 money. But of the $14,400, I'm only going to order you to pay right now $4,800 a year, which is $400 a month, which is directly labeled in his bankruptcy plan, okay? And I'm going to defer the $9,600, which is what counsel just said. They used it a little bit more artfully than I did, which was that he was somehow borrowing from his ex-wife to pay in the future. Well, what's funny about that situation is that as soon as this bankruptcy plan is over, which is a Chapter 13. It's not a – it's not a 7 where all of a sudden he's discharged while he's dead and he has a better ability to pay, which I would agree under the Adamson case that she cites. But that's not – that's not the case here. The case here is that at the end of the bankruptcy plan, number two kid is going to college, and now he owes $38,400. And now we're back here in the exact same issue because what's going to happen is either she's going to say he hasn't – the money that's in the 529 plan isn't done. And this court, if this court sees fit to agree with the trial court, now he's going to have a double obligation because he will not be done with the 529 bankruptcy plan by the time the second child goes to college. He will then be ordered to pay another $38,400 on top of that, and then most likely will also be ordered to pay for college to the second child. It is going to put him in perpetual bankruptcy. This was the point of the argument that I made to the court. The agreement in the pretrial memo, which is in the record, is not that we agree to $14,400 plus 529. It is we agree to $14,400 because that's exactly what the bankruptcy court is saying he can afford to pay. All right. But if this all goes back to the judgment for dissolution where he acknowledged that he would make contributions to the education of the children and he would make that 529 debt payment – I mean, we'll call it whatever, but he would pay into this 529 fund the amount of, what, $85,000 or something like that? How can we change that? You can't. But 513H controls. You have to take us where we lie today, Your Honor. This isn't five years ago. This isn't seven years ago. We're here today. 513H controls. My petition for contribution to college education expenses and modification was filed after the enact of 513H. 513H is not voluntary. It does not have any sort of caveats or parts of it that say if it's not voluntary, if it's involuntary, if it's court order, whatever. It says any payment made to a college plan or 529 plan will be his contribution. To disregard that is basically to say that a statute does not apply to anyone. Thank you. All right, counsel, once again, thank you for your arguments here this morning. We will take the matter under advisement. We are going to stand in recess pending our next case. Thank you.